# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| LEO RAMIREZ, individually and on behalf of a class of similarly situated persons, and JESSICA RAMIREZ, individually and on behalf of a class of similarly situated persons, | Civil Action |
| Plaintiffs, | File No. _____ |
| v. | CLASS ACTION JURY TRIAL |
| OCWEN LOAN SERVICING, LLC, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Archie I. Grubb, II
W. Daniel "Dee" Miles, III *(pro hac vice application forthcoming)*
Andrew E. Brashier *(pro hac vice application forthcoming)*
Rachel E. Boyd *(pro hac vice application forthcoming)*
BEASLEY, ALLEN, CROW, METHVIN
PORTIS & MILES, P.C.
218 Commerce Street
Montgomery, AL 36104

Michael L. Werner
Matthew Q. Wetherington
THE WERNER LAW FIRM
2860 Piedmont Rd NE
Atlanta, GA 30305

**Attorneys for Plaintiffs**

# TABLE OF CONTENTS

Summary ........................................................................................................1

Parties, Jurisdiction, and Venue..................................................................4

Fact Allegations ..........................................................................................5

    A.    Borrowers Pay For And The FHA Supplies Mortgage Insurance
    To Lenders..........................................................................................5

    B.    The FHA Prohibits Lenders From Collecting Post-Payment
    Interest On FHA-Insured Loans, Unless They First Provide The
    FHA-Approved Form. ..........................................................................7

    C.    Lenders Have Collected Billions Of Dollars In Post-Payment
    Interest On FHA-Insured Loans..........................................................12

    D.    Ocwen Did Not Provide The FHA-Approved Form To Leo and
    Jessica Ramirez Before Collecting Post-Payment Interest. ...............17

Class Action Allegations............................................................................19

Count One – Breach Of Contract...............................................................23

Count Two – Declaratory And Injunctive Relief........................................25

Relief Requested .......................................................................................26

## Summary

1.    This is a class action asserted under state law for breach of contract. Defendant Ocwen Loan Servicing, LLC. ("Ocwen") breached its contract with Plaintiffs and other class members through a systematic practice of charging illegal prepayment penalties in the form of "post-payment" interest on loans insured by the Federal Housing Administration without first complying with the uniform provisions of the promissory notes and the FHA regulations governing these loans. As a result, Defendant has collected hundreds of millions of dollars in post-payment interest in an unlawful manner, and through this class action, Plaintiffs seek to recover damages for those class members already injured and declaratory and injunctive relief to prevent future violations by Defendant.

2.    Post-payment interest refers to interest that a lender collects **after** the borrower has paid the **full** unpaid principal of the loan.  For example, if a borrower pays off the loan in full on August 5, and the lender continues collecting interest for the remainder of August, the lender has collected post-payment interest from the borrower.  Any interest collected after the borrower makes payment of the full unpaid principal is post-payment interest.

3.    A promissory note governs the contractual relationship between borrowers and lenders, and the FHA regulations require that lenders issuing FHA-insured loans must include certain uniform provisions in the notes for these loans.

Among other things, the uniform provisions require that "[i]nterest will be charged on unpaid principal" and interest charges must stop once "the full amount of the principal has been paid."  Multistate – FHA Fixed Rate Note, USFHA.NTE, attached as **Exhibit 1**, at 1.  The sole exception to those provisions is that lenders may collect post-payment interest for the remainder of the month in which full payment is made, but only "**to the extent** . . . **permitted by** [**FHA**] **regulations**."  *Id.* (emphasis added).

4.    The FHA regulations permit lenders to collect post-payment interest for the remainder of the month in which full payment is made only when two strict conditions are met: (a) the borrower makes payment of the full unpaid principal on a day "**other than** [the first of the month]" and (b) the lender must provide the borrower with "**a form approved by the** [**FHA**]."  24 C.F.R. § 203.558(c) (2014) (emphasis added).

5.    Both conditions must be met before the lender has the right to collect post-payment interest for the remainder of the month in which full payment is made. For example, if the borrower pays off the loan in full on August 5, and if the lender provides the borrower with the FHA-approved form, both conditions are met and the lender may collect post-payment interest for the remainder of August.  By contrast, if the borrower pays off the loan in full on August 1, the first condition is not met and the lender may not collect post-payment interest for the remainder of August.

Regardless of the date of payment, if the lender does not provide the borrower with the FHA-approved form, the second condition is not met and the lender may not collect post-payment interest for the remainder of August.

6.     The FHA requires use of its approved form because, among other things, the form alerts borrowers, at the time of payment, to the fact that the lender is asserting the right to collect post-payment interest.  *See* HUD Housing Handbook, Administration of Insured Home Mortgages, 4330.1 REV-5 Appendix 8(C), attached as **Exhibit 2**.  Additionally, the form explains the borrower's rights, including the terms under which the lender can collect post-payment interest and how the borrower can avoid paying any post-payment interest.  *Id.*

7.     Although both the uniform provisions of the note and the FHA regulations prohibit lenders from collecting post-payment interest unless they provide borrowers with the FHA-approved form, Ocwen does not use the FHA-approved form.  Instead, Ocwen uses its own unauthorized language, which for all times relevant to this Complaint was not approved by the FHA, and does not fairly disclose to borrowers that they can avoid post-payment interest by making payment of the full unpaid principal on the first of the month.

8.     Because Ocwen does not use the FHA-approved form as required by both the uniform provisions of the note and the FHA regulations, Ocwen has no right to charge post-payment interest from borrowers.  Thus, Ocwen has unlawfully

collected hundreds of millions of dollars in post-payment interest, and it will continue to do so in the future. Through this class action, Plaintiffs seek to recover damages for those class members already injured, as well as declaratory and injunctive relief to prevent future violations.

## Parties, Jurisdiction, and Venue

9.    Plaintiff Leo Ramirez is a citizen of Georgia, residing in Lawrenceville, Georgia. In 2013, Plaintiffs Leo and Jessica Ramirez paid off an FHA-insured loan held by Defendant Ocwen.

10.    Plaintiff Jessica Williams Ramirez is a citizen of Georgia, residing in Lawrenceville, Georgia. In 2013, Leo and Jessica Ramirez paid off an FHA-insured loan held by Defendant Ocwen.[1]

11.    Defendant Ocwen Loan Servicing, LLC, is a private corporation, which held, or continues to hold, FHA-insured loans for Plaintiffs and other class members.

12.    Defendant Ocwen Loan Servicing, LLC, is a duly certified company of the state of Delaware that maintains its Principal Office in West Palm Beach, Florida. Defendant Ocwen maintains a registered agent in Georgia where it may be served with process. Defendant Ocwen's Georgia agent is Corporation Service Company,

---

[1] Plaintiffs Leo Ramirez and Jessica Williams were married subsequent to closing on the home secured by the FHA-insured loan at issue in this case. Jessica Williams' legal name is now Jessica Ramirez, and for purposes of clarity and consistency she will be referred to as Jessica Ramirez herein.

4

which is located at 40 Technology Parkway, South Suite 300, Ben Hill, Norcross, GA 30092.

13.     This Court has subject matter jurisdiction over this class action.  Leo and Jessica Ramirez are each citizens of a State different from Ocwen, and so are many other class members.  *See* 28 U.S.C. § 1332(d)(2).  In addition, the claims of the class in the aggregate exceed the minimally required amount in controversy.  *See* 28 U.S.C. § 1332(d)(6).

14.     This Court has personal jurisdiction over Ocwen.  Among other things, Ocwen is registered to and does conduct business in Georgia, holds mortgages on real property in Georgia, has breached contracts with persons located in Georgia, has caused injuries in Georgia, and generally engages in substantial activity in Georgia.

15.     This Court is also a proper venue for this action.  Ocwen is subject to personal jurisdiction in the Northern District of Georgia, which "[f]or purposes of venue," means that Ocwen resides in this judicial district.  28 U.S.C. § 1391(b)(1), (c).

## Factual Allegations

### A.    Borrowers Pay For And The FHA Supplies Mortgage Insurance To Lenders.

16.     Department of Housing and Urban Development is a department within the executive branch of the United States government.  HUD was established in 1965 by the Department of Housing and Urban Development Act.  *See* 42 U.S.C. § 3532.

The Federal Housing Administration was established in 1934 by the National Housing Act of 1934.  *See* 12 U.S.C. § 1701.  When HUD was created, Congress re-organized the FHA as an agency within HUD.

17.     Among other things, the FHA provides mortgage insurance to FHA-approved lenders for loans on single-family homes.  *See* U.S. Dep't of Housing and Urban Devt.,

http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/fhahistory. The FHA is the largest insurer of mortgages in the world, currently insuring approximately 4.8 million single-family homes.  *Id.*

18.     Mortgage insurance protects lenders against losses caused by borrower defaults.  The lenders bear less risk on FHA-insured loans because the FHA will pay lenders in the event of a borrower default.  *Id.*  In exchange for FHA mortgage insurance, borrowers pay an upfront mortgage insurance premium and make monthly premium payments.

19.     To be eligible to receive FHA mortgage insurance, lenders must be pre-approved by the FHA.  Lenders must also comply with FHA regulations, including but not limited to the regulations contained in Title 24, Subtitle B, Chapter II, Subpart B, Part 203 of the Code of Federal Regulations.  Among other things, FHA regulations require that, for any FHA-insured loan, the lender must include certain uniform provisions in every promissory note.  As a result, each of the approximately

6

4.8 million FHA-insured loans is documented by a promissory note containing certain uniform provisions.

20.    Defendant Ocwen derives substantial economic benefits from its participation in the FHA mortgage insurance program.

21.    All lenders, including Defendant Ocwen, participating in the FHA mortgage insurance program have a duty to comply with the mandatory notice provisions of the FHA regulations.

**B.    The FHA Prohibits Lenders From Collecting Post-Payment Interest On FHA-Insured Loans, Unless They First Provide The FHA-Approved Form.**

22.    One uniform provision lenders must include in the promissory note for every FHA-insured loan addresses the borrower's promise to pay interest for unpaid principal:

> 2.    BORROWER'S PROMISE TO PAY; INTEREST
> In return for a loan received from Lender, Borrower promises to pay the principal sum of _____ Dollars (U.S. $ _____), plus interest, to the order of Lender.  **Interest will be charged on unpaid principal**, from the date of disbursement of the loan proceeds by Lender, at the rate of _____ percent ( _____ %) per year **until the full amount of the principal has been paid**.

Ex. 1 at 1.

23.    Under this provision, the borrower agrees to pay interest only on the **unpaid principal**, and once the borrower pays the full unpaid principal, interest no longer accrues.  This makes sense because, by definition, interest is calculated from

7

the amount of the outstanding principal loaned by the lender to the borrower.

24.    Other government entities follow the same practice.  For example, when lenders issue loans backed by Fannie Mae, Freddie Mac, and the Department of Veterans Administration, interest charges stop on the day the borrower pays the full unpaid principal of the loan, and the lender cannot collect any post-payment interest.

25.    However, for nearly thirty years, the FHA has provided a narrow loophole for lenders.  For mortgages insured by the FHA on or after August 2, 1985 and through January 20, 2015, the FHA allows lenders, subject to strict limitations, to collect interest even after the borrower has paid the full amount of the unpaid principal.

26.    This type of interest is often referred to as "post-payment" interest. Post-payment interest is interest that a lender collects even after the borrower has paid the full unpaid principal. It is also considered a "penalty" because, at that point, the borrower owes the lender **nothing**; the full unpaid principal has been paid, and the lender has all the money it was owed.  The lender is penalizing the borrower for paying the loan before the maturity date.

27.    Although the FHA permits lenders to penalize borrowers, the FHA has imposed strict limitations on the lender's ability to do so.  The FHA prohibits lenders from collecting post-payment interest unless the lender complies with FHA

8

regulations.   Chief amongst those regulations is a requirement to provide the borrower with the FHA-approved disclosure form.

28.    The limitations on post-payment interest are reflected in a uniform provision of the note, which again must be included in the note for every FHA-insured loan:

> 5.    BORROWER'S RIGHT TO PREPAY
> **Borrower has the right to pay the debt** evidenced by this Note, in whole or in part, **without charge or penalty, on the first day of any month**.  Lender shall accept prepayment **on other days** provided that **Borrower pays interest** on the amount prepaid for the remainder of the month **to the extent required by Lender and permitted by regulations of the Secretary**.  If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

Ex. 1 at 2.

29.    Under this provision, the borrower has the right to prepay the full unpaid principal without charge or penalty on the **first** of the month.  The borrower also has the right to prepay the full unpaid principal on days **other than** the first; provided however that, in such cases, the lender can collect post-payment interest for the remainder of that month **if the lender complies with FHA regulations**.

30.    The relevant FHA regulation is titled "Handling Prepayments" and provides that:

> (a) Notwithstanding the terms of the mortgage, the [lender] may accept a prepayment at any time and in any amount.  **Except as set out below, monthly interest on the debt must be calculated on the actual unpaid principal balance** of the loan.

9

. . .

(c) If the prepayment is offered on other than an installment due date [the first of the month], the [lender] may refuse to accept the prepayment until the next installment due date (the first day of the month), or may require payment of interest to that date, **but only if the [lender] so advises the [borrower], in a form approved by the Commissioner**, in response to the [borrower's] inquiry, request for payoff figures, or tender of prepayment.

. . .

(e) If the [lender] fails to meet the **full** disclosure requirements of paragraphs (b) and (c) of this section, the [lender] may be subject to forfeiture of that portion of interest collected for the period beyond the date that prepayment in full was received and to such other actions as are provided in part 25 of this title.

24 C.F.R. § 203.558 (2012) (emphasis added); *see also* 79 FR 50837, Aug. 26, 2014.

31.    Under this regulation, if payment of the full unpaid principal is made on a day other than the first of the month, and the lender provides the borrower the FHA-approved form, then, and only then, can the lender collect post-payment interest for the remainder of the month in which payment of the full unpaid principal was made.

32.    For mortgages insured on or after August 2, 1985 and through January 20, 2015, the FHA-approved form is Appendix 8(C) to the HUD Housing Handbook:

MORTGAGEE NOTICE TO MORTGAGOR
(In response to prepayment inquiry, request for payoff or tender of prepayment in full)

Mortgagor: _____    Date: _____
Address: _____    Loan #: _____
_____    FHA#: _____

This is in reply to your _____(date)_____ inquiry/request for

10

payoff figures or offer to tender an amount to prepay in full your FHA-insured mortgage which this company is servicing.

This notice is to advise you of the procedure which will be followed to accomplish a full prepayment of your mortgage.

The _____(mortgagee name)_____ will:

(a)     [ ]     accept the full prepayment amount whenever it is paid and collect interest only to the date of that payment; or

(b)     [ ]     only accept the prepayment on the first day of any month during the mortgage term; or accept the prepayment whenever tendered with interest paid to the first day of the month following the date prepayment is received[.]

_____

NOTE: It is to your advantage to arrange closings so that the prepayment reaches us on or before (as close to the end of the month as possible) the first work day of the month.

If you have any questions regarding this notice, please contact _____(name and/or department) ____at___(telephone number)___.


_____
Mortgagee

Attachment (Pay off Statement)

Ex. 2 at 1-2.

33.     As HUD explains, "[t]he **basic disclosure** language is necessary because it pertains to the [borrower's] rights under the mortgage."  HUD Housing Handbook, Administration of Insured Home Mortgages, 4330.1 REV-5, Chapter 5-

11

1 (C), at 2, attached as **Exhibit 3** (emphasis added).

34.    HUD also confirms that the lender "**must disclose** the procedures that must be followed with respect to the payoff and **must explain** how the amount of the prepayment has been determined.  **Otherwise, the [lender] must forfeit any interest collected after the date of prepayment**."  *Id.* at 6. (emphasis added)

35.    HUD expressly instructs lenders that "[**n**]**one of the HUD-required language should be deleted**."  *Id.* at 2 (emphasis added).

36.    In sum, pursuant to the uniform provisions of the note and FHA regulations, lenders cannot collect post-payment interest on FHA-insured loans unless (a) the borrower pays the full unpaid principal on a day **other than** the first of the month and (b) the lender has provided the borrower **the FHA-approved form**. If the lender satisfies both of those requirements, only then can the lender collect post-payment interest for the remainder of the month in which payment of the full unpaid principal was made.

## C.    Lenders Have Collected Billions Of Dollars In Post-Payment Interest On FHA-Insured Loans.

37.    From August 2, 1985 through January 20, 2015, lenders including Ocwen have collected billions of dollars in post-payment interest.

38.    The National Association of Realtors estimates that "more than 40 percent of FHA borrowers close during the first 10 days of the month, exposing them to at least 20 days of interest payments."  Kenneth R. Harney, *Interest Costs Don't*

*End With Payoff Of FHA Loan*, Chicago Tribune, Apr. 11, 2004, http://articles.chicagotribune.com/2004-04-11/business/0404110057_1_fha-loan-ginnie-mae-fha-borrowers, attached as **Exhibit 4**. The NAR further "estimate[s] that during 2003, . . . FHA customers who terminated their loans paid an average of $528 in 'excess interest fees,' a cumulative 'prepayment penalty' to those borrowers of **$587 million**." *Id.* (emphasis added).

39. "HUD doesn't get the interest, lenders do. In effect, **lenders are getting interest for money that isn't outstanding**. This may not sound like a big deal, but according to HUD, such post-payment interest charges cost borrowers **$449 million** in 2012." Peter Millar, *The Very New Deal: How FHA Mortgages Are Changing For 2015*, The Simple Dollar, Jan. 9, 2015, http://www.thesimpledollar.com/the-very-new-deal-how-fha-mortgages-are-changing-in-2015/, attached as **Exhibit 5** (emphasis added).

40. "This practice . . . has cost consumers staggering amounts, with estimates ranging into the **hundreds of millions of dollars a year** during periods when mortgage rates were high." Kenneth R. Harney, *FHA Will Stop Lenders From Charging Extra Interest When Homeowners Sell or Refinance*, Washington Post, Sep. 5, 2014, https://www.washingtonpost.com/realestate/fha-will-stop-lenders-from-charging-extra-interest-when-homeowners-sell-or-refinance/2014/09/04/478a2a04-32a6-11e4-8f02-03c644b2d7d0_story.html,

attached as **Exhibit 6** (emphasis added).

41.    "[**T**]**he clear loser** in the full-month interest policy **is 'the one who can least afford it, the consumer**."  Harney, Chicago Tribune, Apr. 11, 2004 (emphasis added).  "**Hundreds of thousands of home sellers have had their pockets picked** at closings during the past decade: They've been charged interest on their mortgages after their principal debts had been fully paid off."  Harney, Washington Post, Sep. 5, 2014 (emphasis added).

42.    Meanwhile, "**the true beneficiaries** of the long-standing practice were [the lenders], who could earn interest on the 'float' – the money they collected from borrowers and had free use of until the end of the month, when they had to disburse final interest payments to bond investors."  Kenneth R. Harney, *Controversial FHA Payoff Rule to End*, Los Angeles Times, Mar. 30, 2014, http://articles.latimes.com/2014/mar/30/business/la-fi-harney-20140330, attached as **Exhibit 7** (emphasis added).

43.    All of the relevant government agencies now agree that collecting post-payment interest is an unfair prepayment penalty and is against public policy.

44.    On August 26, 2009, the Board of Governors of the Federal Reserve System proposed a rule "to amend Regulation Z, which implements the Truth in Lending Act (TILA)," which regulates prepayment penalties.  74 Fed. Reg. 43232, 43232 (Aug. 26, 2009).  The Board stated that "[o]ne such example [of a prepayment

penalty] is 'interest charges for any period after prepayment in full is made.' **When the loan is prepaid in full, there is no balance to which the creditor may apply the interest rate**." *Id.* at 43257 (emphasis added).

45.     On January 30, 2013, the Consumer Financial Protection Bureau issued a final version of its rule titled "Ability-to-Repay and Qualified Mortgage Standards under the Truth in Lending Act (Regulation Z)." *See* 78 Fed. Reg. 6408, 6408 (Jan. 30, 2013).   Regulation Z broadly defines "prepayment penalty" as the "charge imposed for paying all or part of the transaction's principal balance before the date on which the principal is due." *Id*. at 6444.

46.     This definition includes "charges resulting from FHA's monthly interest accrual amortization method."  79 Fed. Reg. 50835, 50835 (Aug. 26, 2014). As CFPB explains:

> [I]t is appropriate to designate higher interest charges for consumers based on accrual methods that treat a loan balance as outstanding for a period of time after prepayment in full as prepayment penalties . . . .  In such instances, **the consumer submits a payment before it is due, but the creditor nonetheless charges interest on the portion of the principal that the creditor has already received**.  The Bureau believes that charging a consumer interest after the consumer has repaid the principal is the functional equivalent of a prepayment penalty.

78 Fed. Reg. 6408, 6445 (Jan. 30, 2013) (emphasis added).

47.     Based on Regulation Z's definition, charges for post-payment interest are now subject to the Truth in Lending Act.  *See* 79 Fed. Reg. 50835, 50835 (Aug. 26, 2014); 75 Fed. Reg. 58539, 58586 (Sep. 24, 2010) ("[T]he Board believes that

the charging of interest for the remainder of the month in which prepayment in full is made should be treated as a prepayment penalty for TILA purposes, even when done pursuant to the monthly interest accrual amortization method.").

48.    In response to those changes by FRB and CFPB, on March 13, 2014, "HUD published a proposed rule in the Federal Register, at 79 FR 14200, to eliminate post-payment interest charges to borrowers resulting from FHA's monthly interest accrual amortization method for calculating interest."  79 Fed. Reg. 50835, 50835.  And, on August 26, 2014, HUD issued a final version of its rule titled "Federal Housing Administration (FHA): Handling Prepayments: Eliminating Post-Payment Interest Charges."  *Id.*

49.    Under the new regulation, "[w]ith respect to FHA-insured mortgages closed on or after January 21, 2015, notwithstanding the terms of the mortgage, the [lender] shall accept a prepayment at any time and in any amount."  24 C.F.R. § 203.558(a).  "Monthly interest on the debt must be calculated on the actual unpaid principal balance of the loan as of the date the prepayment is received, and not as of the next installment due date."  *Id.*

50.    Although CFPB, FRB, and HUD have now all prohibited post-payment interest charges for FHA-insured mortgages closed on or after January 21, 2015, they **did not** make this change retroactive.  "[T]he estimated **7.8 million existing FHA mortgage borrowers** who are not covered by the forthcoming policy change

16

**will continue to be vulnerable** to paying more than they should." Ex. 7 (emphasis added).

**D.    Ocwen Did Not Provide The FHA-Approved Form To Leo and Jessica Ramirez Before Collecting Post-Payment Interest.**

51.    On or about August 20, 2010, Fairway Independent Mtg. Corp. loaned Leo and Jessica money for the purchase of a home in Lawrenceville, GA.  Ocwen later acquired the loan.  The loan was insured by the FHA, so Ocwen is required to comply with FHA regulations with respect to her loan.

52.    Pursuant to FHA regulations, the Ramirezs' promissory note contains certain uniform provisions found in the note for every FHA-insured loan.  These uniform provisions include, among others, paragraph 2 titled "Borrower's Promise to Pay; Interest" and paragraph 5 titled "Borrower's Right to Prepay." *See* Ex. 1 at 1-2.

53.    In 2013, Leo and Jessica Ramirez refinanced the loan.  They requested that Ocwen provide them with a payoff statement so they could pay off the loan.

54.    Ocwen provided a payoff statement dated March 29, 2013.  The statement is a form document, in which Ocwen uses form language throughout the document and fills in only the particular numbers and address information that corresponds to a specific borrower.  *See* March 29, 2013, Payoff Statement from Ocwen to Leo and Jessica Ramirez, attached as **Exhibit 8**.

55.    The form includes the statements "Loan Type," "Interest Calculated,"

"Principal," "Total Due," and "Monthly Interest" among other uniform fields.

56.     The statement contains the following specific numbers for the Ramirez loan payoff:

    a.  Loan Type:  FHA;

    b.  Principal:     $257,385.10;

    c.  Interest Calculated to but not including anticipated closing date of 05/01/2013: $911.57;

    d.  Total Due:   $25,8540.11; and

    e.  Monthly Interest:   $911.57.

57.     By representing that Leo and Jessica Ramirez and owed $911.57 in interest, Ocwen charged and sought to collect interest for the entire month of April, even though the payoff occurred before May 1, 2013.

58.     On or about April 4, 2013, Leo and Jessica Ramirez paid Ocwen $258,540.11, which includes $911.57 interest.  *See* Wire Detail attached as **Exhibit 9**.

59.     Because Ocwen required Leo and Jessica Ramirez to pay interest for the entire month of March and April – even though the Ramirezes paid the full unpaid principal on April 4, 2013, Ocwen collected post-payment interest.

60.     Ocwen did not provide Leo and Jessica Ramirez with the FHA-approved form.  For one, the form used by Ocwen is not an FHA-approved form,

and FHA approval is an express requirement of FHA regulations.  In addition, Ocwen's form is both misleading and thwarts the public policy considerations of the HUD guidelines.

61.    Ocwen's standard FHA Payoff Statement states, "For FHA Loans: If the payoff is received after the first of the month, interest is collected for the entire month rather than as a per diem (daily) calculation. **You are responsible for any additional interest due as a result of a math error on your part**." Ex. 8 at 1 (emphasis added).

62.    Because Ocwen's standard FHA Payoff Statement language does not comply with the mandatory language of the FHA approved form, any post-payment interest collected by Ocwen violates the uniform provisions of the note and FHA regulations.

### Class Action Allegations

63.    Plaintiffs assert claims on behalf of themselves and a class of similarly-situated persons pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.  *See* Fed R. Civ. P. 23(b).

64.    Plaintiffs propose the following class, while reserving the right to modify this definition and/or add additional subclasses.  *See* Fed. R. Civ. P. 23(c).

> Past Borrowers of Ocwen Class – any person who had a loan (i) insured by the FHA at any time during the period beginning on August 2, 1985 and ending on January 20, 2015, (ii) that was held by Ocwen as of the day payment of the full unpaid principal was made, and (iii) for which

Ocwen collected interest for any period after payment of the full unpaid principal was made.

65.    Plaintiffs propose certification of all issues, while reserving the right to alternatively seek certification as to any specific claim or issue. *See* Fed. R. Civ. P. 23(c).

66.    Plaintiffs satisfy the requirements of Rule 23(a).

    a.    <u>Numerosity</u> – The classes are so numerous that joinder is impracticable. The FHA is the largest insurer of mortgages in the world, currently insuring around 4.8 million single family homes. Many of those properties are serviced by Ocwen. Plaintiffs estimate that the class consists of tens of thousands of persons.

    b.    <u>Commonality</u> – There are numerous common questions of law and fact, including but not limited to the following:

        i.    The promissory notes for FHA-insured loans contain uniform provisions that require lenders to comply with FHA regulations before collecting post-payment interest. The essential issue in this case is whether, before collecting post-payment interest, Ocwen complied with the FHA regulation requiring that it provide the borrower "a **form** approved by the Commissioner, in response to the

20

[borrower's] inquiry, request for payoff figures, or tender of prepayment." 24 C.F.R. § 203.558(c) (2014) (emphasis added). Because Ocwen uses **form** payoff statements, the answer to this essential question will be common to all members of the class. The forms used by Ocwen either are or are not the FHA-approved form and that answer will be true for the entire class.

ii.    Other common questions include whether Ocwen has breached its contracts with borrowers by not providing borrowers with the FHA-approved form before collecting post-payment interest on FHA-insured loans held by Ocwen; and whether borrowers with outstanding FHA-insured loans held by Ocwen are entitled to declaratory and injunctive relief.

c.    <u>Typicality</u> – Plaintiffs' claims are typical of the classes' and subclasses' claims. Plaintiffs' promissory note is not just typical of the rest of the class, but is identical with respect to relevant provisions at issue in this case. Further, because Ocwen uses form payoff statements, Plaintiffs have been subject to conduct that is typical of the rest of the class.

d.    <u>Adequacy</u> – Plaintiffs will adequately protect the class's interests.  Plaintiffs have a genuine interest in protecting the rights of the class and Plaintiffs' counsel is experienced in handling complex class actions.  Indeed, Plaintiffs' counsel has been designated and approved as class counsel in numerous state and federal courts.  Further, because Plaintiffs challenge form payoff statements used by Ocwen, the interests of Plaintiffs and the class are aligned.

67.    Plaintiffs satisfy the requirements of Rule 23(b)(2).  Ocwen has engaged in standard, uniform conduct toward the class with respect to collecting post-payment interest.  In particular, Ocwen uses form payoff statements that do not satisfy the note or FHA regulations.  Thus, Ocwen's conduct applies to the class generally, so that corresponding declaratory and injunctive relief is appropriate for the Current Borrowers of the Ocwen Class.

68.    Plaintiffs separately satisfy the requirements of Rule 23(b)(3).

a.    <u>Predominance</u> – The answers to the common questions in this case will decide liability for the entire class.  If Plaintiffs established that Ocwen breached or would breach the contracts by not complying with FHA regulations, it will establish liability for all class members, without the need for any additional proof

22

as to liability.  Thus, common issues predominate over individual issues.

b.      <u>Superiority</u> – A class action is superior to other available remedies.  The common questions would predominate over any individual questions, and thus no other form of litigation could be superior to a class action.  Further, because of the low dollar amounts at stake for each class member, a class action is the only way for Plaintiffs and other class members to obtain redress.  Moreover, the most efficient way to resolve the class's claims is for a court to decide all claims in a single class.  Requiring hundreds of thousands of class members to individually litigate their claims over and over again in various courts would be vastly inefficient.  It also raises the possibility of inconsistent judgments or conflicting declaratory and injunctive relief.

## **Count One – Breach Of Contract**

69.    Plaintiffs incorporate by reference paragraphs 1-68.

70.    Leo and Jessica Ramirez assert a breach of contract claim against Ocwen, on behalf of himself and the Past Borrowers of the Ocwen Class.  The Ramirezes seek damages for Ocwen's improper collection of post-payment interest.

71.    Leo and Jessica Ramirez, and each member of the Past Borrowers of

Ocwen Class had a contract with Ocwen. The terms of the contract are set forth in the promissory note. The note is a form contract containing certain provisions that are identical to provisions found in the notes for every FHA-insured loan.

72.    In Section 2 of the note, "BORROWER'S PROMISE TO PAY; INTEREST," Ocwen agreed that "[i]nterest will be charged on **unpaid** principal" and only "until the full amount of the principal has been paid." Ex. at 1 (emphasis altered).

73.    In section 5 of the note, "BORROWER'S RIGHT TO PREPAY," Ocwen agreed that it would charge "interest on the amount prepaid for the remainder of the month" only "to the extent . . . **permitted by regulations of the Secretary**." *Id.* at 2 (emphasis altered).

74.    The relevant FHA regulation, titled "Handling Prepayments," provides that, "[e]**xcept as set out** [**in this regulation**], monthly interest on debt must be calculated on the actual unpaid principal balance of the loan." 24 C.F.R. § 203.558(a) (2014) (emphasis added). "If the prepayment is offered on other than an installment due date [the first of the month], the [lender] . . . may require payment of interest to that date, but **only if** [the lender] so advises the [borrower], **in a form approved by the Commissioner**, in response to the [borrower's] inquiry, request for payoff figures, or tender of prepayment." *Id.* (emphasis added).

75.    In addition to the express terms of the promissory note, the law implies

24

a duty of good faith and fair dealing, and Ocwen is subject to this duty as well.

76.    Ocwen breached the contract by collecting post-payment interest payments from Leo and Jessica Ramirez, and the other members of the Past Borrowers of the Ocwen Class without first providing the FHA-approved form.

77.    Leo and Jessica Ramirez, and the other members of the Past Borrowers of the Ocwen Class were injured by Ocwen's breach and seek damages for Ocwen's unlawful collection of post-payment interest.  They seek damages for interest collected for the period beyond the date payment of the full unpaid principal was made.

### Count Two – Declaratory And Injunctive Relief

78.    Plaintiffs incorporate by reference paragraphs 1-68.

79.    Leo and Jessica Ramirez assert a claim for declaratory and injunctive relief against Ocwen, on behalf of himself and the Ocwen Class.

80.    Leo and Jessica Ramirez seek a declaration that the payoff statement Ocwen provided to the Ramirezes a on March 29, 2013 – which is the same form that Ocwen has used and continues to use for the entire class – is not an FHA-approved form and that, if Ocwen collects post-payment interest based on this payoff statement or any other unauthorized form, Ocwen will have breached the contract.

81.    Leo and Jessica Ramirez also seek an injunction prohibiting Ocwen from charging or collecting post-payment interest on loans insured by the FHA at

any time during the period beginning on August 2, 1985 and ending on January 20, 2015 if Ocwen does not first provide borrowers the FHA-approved form.

## **Relief Requested**

82.     Plaintiffs ask this Court to:

     a.    certify this action as a class action, including certifying Plaintiffs as class representative and the undersigned counsel as class counsel;

     b.    grant judgment as a matter of law in favor of Plaintiffs and the Class on any or all issues or, in the alternative, hold a jury trial to decide any disputed fact questions;

     c.    award Plaintiffs and the Class any damages to which they are entitled including, but not limited to, compensatory damages, statutory damages and penalties, attorney fees, pre-judgment interest, post-judgment interest, and costs;

     d.    award requested declaratory and injunctive relief; and

     e.    order any other relief as the Court may deem proper and just.

This 14th day of February, 2017.

**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**


*/s/ Archie I. Grubb, II*
W. DANIEL "DEE" MILES, III*
ARCHIE I. GRUBB, II
Georgia Bar No. 314384
ANDREW E. BRASHIER*
RACHEL E. BOYD*
218 Commerce Street
Montgomery, AL 36104
334-269-2343
Archie.Grubb@BeasleyAllen.com
Dee.Miles@BeasleyAllen.com
Andrew.Brashier@BeasleyAllen.com
Rachel.Boyd@BeasleyAllen.com
*Pro hac vice applications pending*

**THE WERNER LAW FIRM**


*/s/ Matt Wetherington*
MICHAEL L. WERNER
Georgia Bar No. 748321
MATTHEW Q. WETHERINGTON
Georgia Bar No. 339639
2860 Piedmont Road
Atlanta, GA 30305
(404) 793-1693
mike@wernerlaw.com
matt@wernerlaw.com

**Attorneys for Plaintiffs**

27